**Frederick WILLS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 71271.**

Missouri Court of Appeals, Western District.

July 20, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 2010.

Application for Transfer Denied Oct. 26, 2010.

Alexa I. Pearson, Columbia, MO, for appellant.

Shaun J. Mackelprang and Jaime P. Rasmussen, Jefferson City, MO, for respondent.

Before Division Three: VICTOR C. HOWARD, Presiding Judge, THOMAS H. NEWTON, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Frederick Wills appeals the circuit court's judgment denying his motion for post-conviction relief. After being charged in Boone County Circuit Court with one count of kidnapping (Section 565.110),[1] one count of forcible sodomy (Section 566.060), and one count of forcible rape (Section 566.030), Wills reached a plea agreement with the State where, in exchange for his guilty plea to the rape charge, the State agreed to dismiss the other two counts. Pursuant to this agreement, Wills entered into an "open plea" on the rape charge and was subsequently sentenced by the circuit court to twenty five years in the Missouri Department of Corrections. On appeal, Wills alleges that his guilty plea was not knowingly and intelligently entered into for a variety of reasons, including the fact that he received ineffective assistance of plea counsel.

We affirm.

## Factual Background

On December 5, 2006, Wills pled guilty to Count II of the State's substitute Information, which charged him with the crime of forcible rape. At the guilty plea hearing, Wills acknowledged that he understood that he was entering into an open plea of guilt, which meant that the circuit court would have sole discretion to sentence him anywhere from ten to thirty years or life in prison. Having evidenced a full understanding of these terms on the record, Wills then pled guilty to forcibly raping the victim.

On February 5, 2007, the circuit court held a sentencing hearing, and sentenced Wills to twenty five years in the Missouri Department of Corrections based on his guilty plea. Further details regarding the circumstances surrounding Wills's guilty plea and sentencing will be outlined as relevant in the analysis section herein.

On August 11, 2008, Wills filed a *pro se* motion for post-conviction relief, which was subsequently amended by counsel. An evidentiary hearing was held on the motion on May 1, 2009.

On June 19, 2009, the motion court issued its Findings of Fact, Conclusions of Law, and Judgment, which denied Wills's post-conviction relief motion.

## Standard of Review

■ In determining whether the motion court erred in denying Wills's motion for post-conviction relief, our review is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(k).[2] Error is clear when the record definitely and firmly indicates that the circuit court made a mistake. *State v. Johnson*, 901 S.W.2d 60, 62 (Mo. banc 1995).

## Analysis

■ In Point One, Wills argues that the circuit court erred in denying his motion for post-conviction relief in light of the fact that his guilty plea "was not knowingly, intelligently, or voluntarily entered because he entered his plea of guilt during a time when he was being deprived of long-prescribed psychiatric medications by authorities at the Boone County Jail, and this deprivation caused him to suffer from symptoms related to his diagnosis of Paranoid Schizophrenia and rendered him unable to understand the proceedings against him or to make rational decisions."

---

1. All statutory references are to RSMo 2000 as updated through the 2009 cumulative supplement, unless otherwise indicated.

2. Unless otherwise indicated, rule citations are to the Missouri Rules of Criminal Procedure (2010).

■ "A plea must be a voluntary expression of the defendant's choice and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences of the act." *Roberts v. State,* 276 S.W.3d 833, 836 (Mo. banc 2009). "Due process requires that a person who wishes to plead guilty must be competent to do so and must enter the plea knowingly and voluntarily." *State v. Shafer,* 969 S.W.2d 719, 731 (Mo. banc 1998).

■ The Supreme Court of Missouri outlined the following applicable legal standards in *Wilson v. State:*

> To be competent to plead guilty, Wilson had to have a sufficient present ability to consult with his attorneys with a reasonable degree of rational understanding and had to have a rational and factual understanding of the proceedings against him. *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Brown v. State,* 485 S.W.2d 424, 429 (Mo.1972); *Pulliam v. State,* 480 S.W.2d 896, 903 (Mo.1972). Some degree of mental retardation does not automatically render him incapable of entering a voluntary plea of guilty. *Id.* at 904; *State v. Lowe,* 442 S.W.2d 525, 529–30 (Mo.1969). Whether Wilson understood the nature of the proceedings against him and had a sufficient present ability to consult with his attorneys in this case was one of the issues properly before the motion court for determination. *Martin v. State,* 558 S.W.2d 701, 704 (Mo.App.1977).
>
> ... A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving ... or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.

813 S.W.2d 833, 835 (Mo. banc 1991) (quoting *Henderson v. Morgan,* 426 U.S. 637, 644, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976)).

In rejecting his claim for post-conviction relief, the motion court expressly found that Wills's testimony that his mental illness made him unable to understand the proceedings against him or make rational decisions "to be not credible." Specifically, the motion court found the following:

> First, counsel testified at the evidentiary hearing that they had meaningful conversations with Movant throughout their representation of him and never felt like he did not understand what they were saying or that he was unable to make rational decisions. Counsel testified that Movant discussed the pros and cons of going to trial and pleading guilty. Second, this court conducted the plea hearing, the sentencing hearing, and the evidentiary hearing and finds that Movant had no difficulty with his ability to reason or understand the proceedings.

J. 5–6.

Simply put, Wills fails to demonstrate that the above findings and conclusions by the motion court were somehow clearly erroneous. Wills argues that his sudden, last minute decision to enter into an open plea of guilt somehow objectively demonstrates that because of his mental illness he did not meaningfully understand the proceedings when he pled guilty. But mentally healthy people make spur of the moment decisions for a variety of reasons, and therefore the fact that he made a swift decision to enter into an open plea of guilt, by itself, is insufficient to demonstrate that he did not knowingly and intelligently plead guilty.

In this Point, Wills relies heavily on his mental health records from Illinois (Exhib-

it # 5) in an attempt to demonstrate that the motion court erred in accepting his guilty plea in light of the fact that he "has a variety of mental health diagnoses," including "Paranoid Schizophrenia," "Post–Traumatic Stress Disorder," "Intermittent Explosive Disorder," "Depression," and "Antisocial Personality Disorder." (citing to Exhibit 5). Wills notes that his records show that he had been "prescribed Thorazine, Zyprexa, Trazadone, Elavil, Mellaril, Prolixin, and Geodon" for these conditions.

The crux of Wills's argument is not merely that he had "mental health diagnoses," but rather that "he was being deprived of long-prescribed psychiatric medications by authorities at the Boone County Jail" causing him "to suffer from symptoms related to his diagnosis of Paranoid Schizophrenia." However, Wills ignores the fact that, beyond his own self-serving testimony, he produced no competent evidence to prove that he was being deprived of any such medication by the jail, or that he was in fact suffering from the symptoms that he described. "The movant bears the burden of proving his post-conviction claims by a preponderance of the evidence." *Dorsey v. State*, 156 S.W.3d 825, 830 (Mo.App. W.D.2005) (citing Rule 29.15(i)). "At a post-conviction relief evidentiary hearing, the motion court determines the credibility of the witnesses and is free to believe or disbelieve the testimony of any witness, including that of the Movant." *Hurst v. State*, 301 S.W.3d 112, 117 (Mo.App. E.D.2010).

Here, the trial court, who was present at each stage of these proceedings and had the opportunity to observe Wills, expressly found that "Movant's testimony in this regard [is] not credible." J. 5. " 'We presume that the motion court's findings and conclusions are correct, and defer to the motion court's determinations of credibility.' " *Hurst*, 301 S.W.3d at 117 (quoting *Clay v. State*, 297 S.W.3d 122, 124

(Mo.App. S.D.2009)). Indeed, we find that the trial court's findings and conclusions are supported by the record on appeal. The guilty plea transcript reflects that Wills was able to understand, follow, and meaningfully participate in his guilty plea. "While a defendant's demeanor may not be dispositive of his or her competency to stand trial, the court is certainly free to consider demeanor when determining competency and give it the weight it determines is warranted." *Hubbard v. State*, 31 S.W.3d 25, 36 (Mo.App. W.D.2000) (internal citations omitted). Moreover, Wills's own testimony at the post-conviction relief hearing confirmed that he believed he was "competent to enter a plea for 15 years," thus allowing the motion court to conclude that Wills's claim was motivated by his dissatisfaction with the length of his sentence as opposed to his mental capacity at the time he pled guilty.

At argument, Wills directs us to the case of *State v. McCurry–Bey*, 298 S.W.3d 898 (Mo.App. E.D.2009), as controlling in this matter. However, *McCurry–Bey* is easily distinguishable. In that case, the defendant produced two licensed psychologists, one of whom had been originally retained by the State, who had recently evaluated him and who testified that the defendant was incompetent to stand trial. *Id.* at 900. To counter this expert testimony by the defendant's witnesses, the State did not produce any medical testimony regarding the defendant's mental condition, but relied instead on the observations of the trial court throughout the trial. *Id.* at 901–02. In the case at bar, there was no medical testimony at the hearing, and Wills relied upon past medical records to try to establish his incompetence at the present time. Without expert medical testimony as to Wills's current medical condition, the trial court was justified in basing the decision on his observations throughout the proceedings and the testimony of Wills's counsel. *Azbell v. State*, 144 S.W.3d 863, 872

(Mo.App. S.D.2004) ("Despite Movant's letters, the record shows nothing in Movant's demeanor, mannerisms, or responses that would raise suspicion that he was incompetent to plead guilty or proceed.").

Moreover, Wills produced no evidence at the hearing to establish whether the Boone County Jail had *any record* of dispensing or failing to dispense medication to him. Thus, the motion court was left, by Wills, to speculate whether under his argument the Jail was simply not on notice that he was supposed to be receiving medication, or whether the Jail engaged in an intentional, purposeful withholding of prescribed medication. Without such evidence, the motion court was not precluded from inferring that the Jail had records that established that Wills was, in fact, being given his medication as prescribed, and thus he was being treated for his mental health maladies. *See generally, State v. Davis,* 965 S.W.2d 927, 930 (Mo. App. W.D.1998) ("The prosecution may argue an adverse inference from a defendant's failure to produce evidence which could be reasonably expected to be in the defendant's favor.").

Furthermore, Wills failed to specify in his motion for post-conviction relief or in his testimony *which* medications that he was currently prescribed that he was allegedly not being given by the Jail. He also failed to put forth credible evidence to demonstrate *how* the failure to receive these specific medications would cause him to be unable to knowingly and voluntarily plead guilty. Again, Wills relies solely on his self-serving testimony and his past Illinois medical records in attempt to demonstrate that he was incompetent to plead guilty "[s]ince his symptoms without medication cause him to be paranoid and cause him to think that people are different people."

Even when assuming *arguendo* that Wills failed to receive one or more of his medications, this alone was insufficient to demonstrate on appeal that the trial court erred. *Azbell,* 144 S.W.3d at 872 ("[T]he record refutes his allegations that the voluntariness of his guilty plea was affected by any denial of psychotropic drugs at the time surrounding his guilty plea. Thus, we cannot say that the court's findings and conclusions were clearly erroneous, particularly the court's finding that, given the circumstances, Movant was not prejudiced by any apparent denial of his psychotropic drugs during the time he was initially held in custody at the Greene County Jail."). We have no qualm with the general proposition that someone with paranoid schizophrenia *could* have severe psychotic reactions to the failure to receive a specific anti-psychotic medication, but this generality by itself is insufficient to demonstrate that the motion court clearly erred in failing to grant Wills's motion for post-conviction relief. *Id.* No medical expert testified to support Wills's specific claim at the post-conviction relief hearing, and thus the motion court again was left to speculate as to how the failure to receive such medication(s) would prevent Wills from knowingly and voluntarily pleading guilty.[3]

3. Wills insinuates that his medical records, by themselves, were all the evidence that was needed to demonstrate that the failure to receive his "medications" rendered him incompetent to plead guilty. Exhibit 5 is predominately a history of what medications Wills was receiving while incarcerated in Illinois, but these records alone were insufficient to make the requisite showing to prove that the failure to take any of one these medications would have had a specific adverse affect on him. Moreover, Exhibit 5 did contain a report from a medical professional with the initials "kft" from 2002 that notes, among other things, "[p]atient *believes* that he is better with the Zyprexa and since he is *claiming* psychotic symptoms with response to an anti-psychotic, this *appears* to be appropriate." *Id.* at 2 (emphasis added). In this sense, Exhibit 5 demonstrates why, without supporting expert testimony, the motion court would

Finally, Wills argues that his inability to knowingly and intelligently plead guilty was supported by "his testimony that he was found to have diminished capacity in prior criminal proceedings in Illinois." However, he failed to offer any records from the Illinois court to support this allegation. If such a finding were actually made in a previous court proceeding, these court records would be relatively easy to obtain to present as evidence before the motion court. *State v. Gebhardt*, 725 S.W.2d 628, 630 (Mo.App. E.D.1987) ("The juvenile court records were in existence long before the trial ... Any material relevant to defendant's claim of diminished capacity could have been obtained from those records before trial.").

The trial court judge was in a much better position to see, hear, and evaluate the behavior and testimony of Wills in each of these hearings. We will defer to his factual findings in this regard.

For all of the aforementioned reasons, Point One is denied.[4]

In Point Two, Wills argues that the motion court erred in denying his motion for post-conviction relief because he received ineffective assistance of counsel prior to pleading guilty "in that counsel failed to respond to Mr. Wills' requests to present evidence of his long history of serious mental illness to the court, and counsel had no reasonable explanation for failing to act on these requests, which prejudiced Mr. Wills because there is a reasonable probability that if counsel had presented this information, the court would have been required to order a mental examination and the results could have precluded the court's acceptance of the plea altogether."

be warranted in rejecting Wills's claim as presented.

4. Wills argues in Point One that his trial counsel failed to respond to his requests that

■ " 'To be entitled to post-conviction relief for ineffective assistance of counsel, the movant must satisfy a two-prong test.' " *Glaviano v. State*, 298 S.W.3d 112, 117 (Mo.App. W.D.2009) (quoting *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009)). "The movant must show that his counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would exercise in a similar situation and that trial counsel's failure prejudiced the defendant." *Id.*

■ "However, by entering a plea of guilty, a defendant waives every claim of error except claims involving the voluntariness or understanding of the plea." *Herriford v. State*, 295 S.W.3d 904, 906 (Mo. App. W.D.2009). As it pertains to pleading guilty when one later claims mental health issues at the time of the guilty plea, this Court has held the following:

Normally to satisfy the prejudice prong in the context of a guilty plea, a movant must show a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty and would instead have insisted upon going to trial.... However, a movant's claim that his or her counsel was ineffective for failing to properly investigate his or her mental health status and present such information to the court does not lend itself very well to the outcome test in *Strickland.* Since to allow an incompetent person to plead guilty is a *per se* due process violation, whether an incompetent person would still have pled guilty despite his or her counsel's ineffective assistance is irrelevant. Instead, in such a situation, with respect to the prejudice prong of a claim of ineffective

counsel pursue his mental health issues prior to him pleading guilty. As Wills notes, however, this is the substance of his second Point, and therefore we will address those issues in Point Two to avoid duplicative analysis.

assistance of counsel, the movant need only demonstrate a reasonable probability that he was incompetent, sufficient to undermine confidence in the outcome. This is a lower burden of proof than the preponderance standard. As such, in the context of a guilty plea where the movant has alleged that he or she was incompetent to plead guilty and his or her counsel was ineffective for failing to adequately investigate his or her mental health status, in determining whether the movant was prejudiced by his or her counsel's ineffective assistance, the motion court must first determine whether there was a reasonable probability that the movant was incompetent. If the motion court determines that there was not a reasonable probability that the movant was incompetent, the inquiry can proceed to a second level, where the court determines whether the movant, but for his or her counsel's unprofessional errors, would not have pleaded guilty and would instead have insisted upon going to trial.

*Hubbard v. State*, 31 S.W.3d 25, 38 (Mo. App. W.D.2000) (citations and internal quotation marks omitted).

Here, Wills claims that he received ineffective assistance of counsel at his guilty plea *and* at his sentencing hearing. Accordingly, we analyze these claims separately.

■ To begin with, Wills asserts that because he lacked the mental capacity to enter a guilty plea on the date in question pursuant to Section 552.020, the trial court erred in denying his motion for post-conviction relief. But for the reasons expanded upon at length in Point One, Wills has failed to demonstrate even a reasonable

probability that he was incompetent at the time he pled guilty. Simply put, Wills has failed to adduce any credible evidence that would have given the motion court "reasonable cause to believe that the accused lacks mental fitness to proceed" at the time of his guilty plea. Section 552.020. Therefore, Wills's plea counsel was not ineffective in this regard.

Moreover, Wills cannot demonstrate that he was prejudiced by his trial counsel's failure to present this evidence of his mental health prior to his guilty plea because he has not put forth credible evidence that, but for his alleged counsel's unprofessional errors, he would not have pled guilty and would instead have insisted upon going to trial. *Hubbard,* 31 S.W.3d at 38. On appeal, Wills asserts that he was prejudiced by the alleged ineffective assistance of his plea counsel merely because the mental health information "could have precluded the court's acceptance of the plea altogether," which is not a tenable argument for the reasons set forth above.

Wills does not argue on appeal that had he been ordered to receive a competency examination by the motion court pursuant to Section 552.020, this would have somehow given him a clearer understanding of his case, thus motivating him to fight the charges through a jury trial. Rather, the record on appeal reflects merely that Wills was dissatisfied with the length of his sentence, which is insufficient to demonstrate prejudice on appeal.[5] "[I]f a Rule 24.035 motion were available to anyone who would have not agreed to the plea if his attorney could have *possibly* gotten him a better plea deal, it is hard to imagine a defendant who would not meet that stan-

---

**5.** Wills testified at his post-conviction relief hearing that he "wanted to go to trial," but this declaration by itself does not explain how his desire to go to trial was predicated on his attorney's failure to present this mental health evidence to the court prior to his guilty plea. Rather, Wills's statement was made in the context of him articulating his desire to receive or negotiate a better plea deal, which is not a basis by itself for relief on appeal.

dard-a standard that does not exist under the law." *Herriford,* 295 S.W.3d at 907. "Instead, the requirement for a plea to be found involuntary is that, absent the alleged ineffective plea counsel's error, the defendant would not have been induced to agree to the plea." *Id.* "Consequently, though [Wills] attempts to frame his claim of attorney error as an issue affecting his voluntary acceptance of his guilty plea, this argument fails because he does not assert that but for his counsel's failure to investigate his mental illness prior to plea negotiation, he would not have accepted the plea that he ended up accepting." *Id.*

■ Wills also argues that he received ineffective assistance of counsel because his plea counsel failed to present evidence pertaining to his mental conditions at his sentencing hearing. The trial court made the following findings and conclusions as it pertained to this claim:

> Movant claims that his counsel was ineffective for failing to argue, as mitigation during sentencing, Movant's long history of mental illness and treatment. Counsel testified that Movant never discussed his mental history with counsel and he did not recall that being an issue that was raised. This court finds counsel's testimony credible. This court also notes that Movant mentioned his mental history to the SAR writer and thus, that information was before the court. This court also finds that even considering the evidence of mental health that Movant presented at the evidentiary hearing, this court's determination of the sentence would not have changed.

Counsel was not ineffective and Movant was not prejudiced.

J. 4.

■ Wills's inability to demonstrate prejudice from the absence of the evidence pertaining to his mental health at the sentencing hearing is dispositive of this issue. To demonstrate prejudice, the movant must "show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Simmons,* 955 S.W.2d 729, 746 (Mo. banc 1997). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Before this Court, Wills fails to respond to the trial court's critical finding and conclusion that when "considering the evidence of mental health that Movant presented at the evidentiary hearing, this court's determination of the sentence would not have changed." [6] Accordingly, it is difficult to discern how Wills was even plausibly prejudiced by the failure to present the evidence pertaining to his mental health at the sentencing hearing. Because Wills knowingly and intelligently entered into an open guilty plea (during which it was explained to him by the Court that he could be sentenced anywhere from ten to thirty years or life in prison), we deny Point Two.

■ In Point Three, Wills argues that the motion court erred in denying his motion for post-conviction relief in light of the fact that he received ineffective assistance of counsel "because counsel unreasonably failed to act on a written request to with-

---

**6.** The instant case is distinguishable from *Vaca v. State,* 314 S.W.3d 331 (Mo. banc 2010), because (among other reasons) in *Vaca* the Supreme Court of Missouri dealt with the issue of *jury* sentencing. Here, because the

motion court was the court that sentenced Wills, it was in a unique position to conclude that no prejudice followed to Wills by his attorney's failure to submit this mental health evidence at the sentencing hearing.

draw his open plea of guilty prior to sentencing." We disagree.

■ Rule 29.07(d) pertains to a "Withdrawal Of Plea Of Guilty" and states that "[a] motion to withdraw a plea of guilty may be made only before sentence is imposed or when imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." "The accused is not entitled to withdraw a guilty plea as a matter of right; such relief is reserved for extraordinary circumstances, such as a showing of fraud, mistake, misapprehension, fear, persuasion, or the holding out of false hopes." *State v. Taylor*, 929 S.W.2d 209, 215 (Mo. banc 1996). "If a defendant is misled or induced to enter a plea of guilty by fraud, mistake, misapprehension, coercion, duress or fear, then the defendant should be permitted to withdraw the plea." *Dobbins v. State*, 187 S.W.3d 865, 867 (Mo. banc 2006).

In rejecting Wills's post-conviction relief motion, the motion court made the following findings and conclusions:

> Movant claims that his counsel was ineffective because counsel failed to honor his request to withdraw his 'open' plea and to waive his SAR, accepting the State's offer of 20 years in the Missouri Department of Corrections. The evidence established that Movant had sent a letter after his plea of guilty but prior to his sentencing to counsel requesting that his plea be withdrawn and that he accept the 20 year offer [previously] made by the State. Counsel testified that they did not recall ever seeing that letter. Regardless, Movant's claim must fail [because] Movant's claim is simply a claim of "buyer's remorse" which is not

a valid reason to allow a guilty plea to be withdrawn."

J. 3.

Here, Wills has failed to demonstrate that had his plea counsel filed the motion to withdraw the guilty plea, he would have been allowed to withdraw his guilty plea. Of course, Wills needs to make this showing in order to demonstrate that he was prejudiced by his attorney's alleged ineffective assistance of counsel. *See generally, State v. Hunter*, 840 S.W.2d 850, 870 (Mo. banc 1992) ("The post-conviction court was not clearly erroneous in finding counsel was not ineffective for failing to investigate and file a meritless motion to suppress defendant's confession.").

Wills argues that the record supports his argument that he had good cause to withdraw his guilty plea in light of the fact that he did not understand the terms of his guilty plea because of his counsel's ineffective assistance of counsel. We disagree.

Wills cites to *Dobbins* for the proposition that "[p]rejudice can be shown when counsel's ineffectiveness caused movant to enter an open plea rather than accepting a more favorable plea agreement," but the Supreme Court of Missouri did not announce such a broad holding in that case. In *Dobbins*, the Court reversed and remanded the motion court's denial of post-conviction relief based on the fact that the defendant's guilty plea was not entered in a knowing and voluntary fashion. 187 S.W.3d at 867. In so holding, the Court found that defendant had "relied on his attorney's [mistaken] advice that, whatever sentence he received, he would be eligible to petition for early release pursuant to section 558.046 upon completion of a detoxification and rehabilitation program." *Id.* at 866. The fact that this "advice was incorrect" was essential to the trial court's holding that defendant received ineffective assistance of counsel. *Id.* at 867.

While he argues that "he felt he was misled" by counsel and that his plea deal was "clouded with confusion," Wills fails to cite to anything other than his own testimony at the post-conviction hearing to support such baseless allegations. The plea transcript demonstrates that Wills was properly advised that he was entering into an "open plea" from which he could be sentenced by the court from ten to thirty years or life in prison. In addition, Wills affirmatively acknowledged that if the court chose to sentence him beyond what his counsel or the State argued for at the sentencing hearing, that the court would not allow him to withdraw the plea of guilty.

■ Wills argues that his plea "was neither knowing nor voluntary" because he realized after he pled guilty "that with his background in Illinois he did not think there was any way that Judge Hamilton would give him any less time than the State's recommendation" of twenty years imprisonment. "The expectation that a defendant will receive a lesser sentence or a disappointed hope of a lesser sentence does not make a plea involuntary." *Redeemer v. State*, 979 S.W.2d 565, 572 (Mo. App. W.D.1998).

We can understand Wills's frustration that he entered into an "open plea" that resulted in him being sentenced to twenty five years imprisonment, when he had previously refused the State's offer to plead guilty for twenty years imprisonment. But this fact alone does not establish that he is entitled to post-conviction relief. Specifically, the record reflects that Wills had an understanding that he could receive up to life in prison, and that he entered the open plea because this was his only possibility through pleading guilty to receive a sentence that was less than the twenty year sentence offered by the State. Because Wills has failed to allege or prove sufficient facts to support his motion for post-conviction relief, this claim must be denied.

Point Three is denied.

■ In his final Point Relied On, Wills argues that the motion court erred in denying his *pro se* motion for post-conviction relief "without entering specific findings of fact and conclusions of law on his pro se claims, which were addressed at the evidentiary hearing, because this failure denied Appellant due process of law … in that the order is entirely insufficient to provide for meaningful appellate review of these claims." We disagree.

Wills is correct that Rule 24.035(j) states that "[t]he court shall issue findings of fact and conclusions of law on all issues *presented.*" *Id.* (emphasis added). It is not disputed that after Wills filed his *pro se* motion for post-conviction relief on August 11, 2008, Wills's appellate counsel timely filed an amended motion for post-conviction relief.

"[T]he parties and the court should consider only the amended motion, and not Mr. Day's *pro se* motion" because the "amended motion supersedes Mr. Day's *pro se* motion and renders it a *nullity.*" *Day v. State*, 143 S.W.3d 690, 693 (Mo. App. W.D.2004) (emphasis added). "In fact, Rule 24.035(g) prohibits the amended motion from incorporating any material in any previously filed motion." *Id.* at 693–94. "Allegations in a *pro se* motion that are not included in a subsequently filed amended motion are not for consideration." *Self v. State*, 14 S.W.3d 223, 226 (Mo.App. S.D.2000). "The motion court had no duty to respond to the allegations in movant's *pro se* motion that were not in the amended motion." *Id.* "The reference to those allegations in the motion court's findings is *surplusage.*" *Id.* (emphasis added).

Here, the amended post-conviction relief motion filed by Wills's appellate counsel did not incorporate, either directly or im-

plicitly, Wills's *pro se* claims. Therefore, such *pro se* claims were not properly before the motion court because they were a nullity, and accordingly, the motion court's findings and conclusions pertaining to Wills's *pro se* claims were merely surplusage that cannot be a basis for post-conviction relief.[7]

Point Four is denied.

## Conclusion

The circuit court's judgment, denying Wills's motion for post-conviction relief, is hereby affirmed.

All concur.

7. If the additional claims raised in Wills's pro se motion had been properly preserved, he still would not be entitled to relief because he failed to raise the issue of the lack of proper

findings in a motion to amend the judgment filed before the trial court, as is required by Rule 78.07(c).